UNITED STATES

v.

**Airman First Class Todd E. SHEP-
HERD, FR 574–78–3004, United
States Air Force.**

**ACM 27838.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 April 1989.

Decided 13 Feb. 1990.

Appellate Counsel for the appellant: Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain David G. Nix.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

**PER CURIAM:**

Appellant stands convicted by a general court-martial composed of members of aggravated assault in violation of Article 128, UCMJ, 10 U.S.C. § 928. He was found not guilty of attempted larceny of a car stereo. His approved sentence extends to a bad conduct discharge, confinement for three months, partial forfeitures and reduction to airman basic.

On the evening of 5 November 1988, Airman First Class Kevin Kobylski was celebrating a friend's birthday at an off-base club near Fort Walton Beach, Florida. At about 2230 he took his girlfriend outside to show her his recently acquired Suzuki Samurai convertible. Since he remembered locking the vehicle, he was surprised to find the appellant seated in the passenger seat when he opened the door. Appellant said he was drunk and apparently had gotten into the wrong jeep since he'd had one like it. Airman Kobylski accepted this explanation, and, after the appellant departed, looked for his wallet which he remembered leaving under the passenger seat. When he failed to find it, he ran after the appellant who eluded him. Upon returning to his car, Kobylski's girlfriend handed him his wallet; she also showed him that his radio/stereo had been pulled out from its mounts, the wires were disconnected and it was hanging from the dashboard.

Airman Kobylski then saw the appellant peeking from behind a Coke machine between two buildings. Kobylski pursued the appellant toward the beach and found him hiding in a weedy dune area. Appellant was lying on his stomach, so Kobylski jumped on his back and sat on him to prevent his escape. When Airman Kobylski's girlfriend arrived, he told her to call the police. Soon thereafter, two of appellant's friends approached, so Kobylski released the appellant. They stood facing each other arguing; Kobylski accused the appellant of trying to steal his car radio and told the appellant to wait for the police. Appellant maintained he was drunk, had gotten into the wrong vehicle and denied trying to steal the radio. No blows were thrown; however, they did engage in a "shoving match."

As friends of the parties began to gather, Airman Kobylski was distracted by something one of appellant's friends said. He turned his head, and appellant struck him in the face with his right hand. Kobylski was stunned as he fell backwards. Appellant charged and forced him to the sand where they wrestled before Airman Kobylski could begin to get up. When he got to his hands and knees, appellant began choking him. Appellant was standing behind Kobylski with an arm around his throat and pulling up. Appellant said, "I've done killed one and it won't bother me to do it again." With his remaining breath, Airman Kobylski called to his girlfriend for help. Reacting to her screams, one of Kobylski's friends knocked appellant off of

**654**

Kobylski who was bleeding badly from his nose which was pushed over to the right side of his face. Before the police arrived, appellant ran from the beach.

After talking to the police, Airman Kobylski sought medical treatment at the Eglin Air Force Base emergency room. Examination revealed that his nose bone was shattered, the cartilage was broken and there were fragments of bone inside his nose. Additionally, he had two chipped teeth. Naturally, he was in severe pain. Due to swelling, corrective surgery on his nose was delayed; when surgery was performed, it required rebreaking the nose, scraping out bone fragments and installing two rods to straighten it.

Based primarily on the accused's testimony, the military judge gave special instructions covering self defense, withdrawal from an affray and mutual combat. At the trial counsel's request and over defense objection, he also gave the following instruction on citizen's arrest:

Now under the common law as it exists in Florida, private persons may arrest for a felony; such as the offense of theft of a car stereo valued over $100, under certain circumstances. And that would be if the felony was committed in their presence, or, if they knew it was committed and they had probable cause to believe that the person arrested committed the felony. Probable cause means more than mere suspicion. It's a reasonable grounds for belief that the person apprehended was the perpetrator of the offense. A person making a citizen's arrest may only use that amount of force necessary to accomplish the apprehension and to detain the individual. If you find that Airman Kobylski was merely attempting to detain the accused for authorities, but that the accused was unaware of that fact, then you should evaluate the accused's actions in accord with the law of self-defense as I have previously instructed you. On the other hand, if you find that the accused was aware that Airman Kobylski was only attempting to detain him for authorities and that Airman Kobylski was not using excessive force to effect that apprehension,

then the defense of self-defense would not be available to the accused.

Before this Court appellant asserts that the military judge erred by giving the citizen's arrest instruction and that the instruction itself was factually deficient. We disagree. *See State v. Phoenix,* 428 So.2d 262, 265 (Fla.App. 4 Dist 1982). Under R.C.M. 920(a) and Discussion, a military judge should tailor his instructions to fit the circumstances of the case and fairly and adequately cover the issues raised by the evidence. Additionally, if an issue has been raised, (*See* R.C.M. 920(e) Discussion), ordinarily the military judge must instruct on the issue when requested to do so by counsel for either the prosecution or defense. R.C.M. 920(c) and Discussion. That is precisely what this military judge did. Under the facts of this case, we find that the military judge acted properly in giving the instruction, and we find no possibility of prejudice to the substantial rights of the appellant.

■■■ Using an unusual procedure, the military judge attached a Memo of Decision, dated 23 May 1989, to his authentication of the record of trial. In it he explained that his instruction on citizen's arrest was inaccurate in that "theft of a car stereo" is not a felony under Florida law, citing Florida Statutes, Crimes, Section 812.014, Theft, of which we take judicial notice. Nevertheless, persuasive evidence in the record established that the appellant broke into Airman Kobylski's car prior to the attempted larceny being discovered. As Judge Mahoney further explained in his Memo, unlawful entry of a motor vehicle constitutes statutory burglary, a third degree felony, under Florida law. *See* Florida Statutes, Crimes, Section 810.02, Burglary and Trespass and Section 810.011 Definitions, both of which we judicially note. Since Airman Kobylski clearly possessed sufficient information to form a reasonable belief that the appellant "burglarized" his car, the citizen's arrest instruction properly clarified the extent to which Airman Kobylski could resort to force in detaining or apprehending the appellant.

While it was error for the military judge to inform the court members that larceny of a car stereo was a felony, we find it to be harmless error under the circumstances.

 Appellant next asserts that the military judge committed prejudicial error by allowing testimony regarding the appellant's lack of potential for continued service and by admitting, over defense objection, evidence of administrative reprimands and counselings received by him. Regarding appellant's lack of potential for rehabilitation and continued service, a master sergeant who had known the appellant for over two years, observed his duty performance almost daily, and reviewed his Unit Personnel Records Group prior to trial, testified in part: "In my opinion, unless—there was a complete turn-around of Airman Shepherd, I do not feel that he would have continued purpose in the United States Air Force." There was no objection to the question or answer, and defense counsel did not cross-examine the witness. Under these circumstances, we find any error committed to have been waived. Mil. R.Evid. 103(a); R.C.M. 801(g); *United States v. Ohrt*, 28 M.J. 301, 304 (C.M.A. 1989); *United States v. Freeman*, 29 M.J. 865 (A.F.C.M.R.1989). In evaluating for possible prejudice, we note that the defense presented two witnesses immediately after the master sergeant testified. Both stressed the appellant's capacity for hard work, his technical proficiency and his excellent rehabilitation potential. One, a chief master sergeant, was a particularly impressive witness. This testimony would have allowed the prosecution to use the master sergeant's negative opinion regarding rehabilitation in rebuttal if his testimony had been excluded as R.C.M. 1001(b)(5) evidence. Therefore, we find no possibility of prejudice to the rights of the appellant.

 Regarding the administrative reprimands and letters of counseling which documented incidents of minor misconduct by the appellant, all were objected to at trial and admitted for sentencing by the military judge. Six letters of counseling were admitted as R.C.M. 1001(b)(2) evidence pertaining to the character of the appellant's prior service. These documents were maintained in the appellant's Assigned Personnel Information File and properly received into evidence under Air Force Regulation 111-1, *Military Justice Guide*, para. 13-4b(1) (30 September 1988) as relevant material from the file to which the appellant had an opportunity to respond. In fact, appellant signed all six counseling forms and made comments on five. On the sixth he signed the form and printed "None" in the block entitled, "I acknowledge receiving the counseling/recommendations and advice described above and have the following comments: (If none, so state.)." *See United States v. King*, 29 M.J. 535 (A.C.M.R.1989). Contrary to appellant's assertion, we hold that the Record of Individual Counseling form, AF Form 174, Dec 86, which provides for a counselee's "Acknowledgement of Counseling" in Block IV, a "Summary of Counselee's Comments (So state if none)" in paragraph 14 and a counselee signature block, provides sufficient opportunity for counselees to respond to allegations, as required by paragraph 13-4b(1)(b)2 of the regulation. (A similar local form also met these regulatory requirements). Naturally, for the forms to be admissible, these blocks must be filled in by the counselee, or an appropriate supervisor must provide an explanation as to why they were not completed. Preferably such explanation will be in writing on the form.

 After the defense completed its sentencing case, trial counsel offered three letters of reprimand from the appellant's personnel information file as matters in rebuttal. Since the appellant had not been given the opportunity to respond to these letters, the military judge erred by receiving them in evidence. *United States v. Smith*, 29 M.J. 736 (A.F.C.M.R.1989); AFR 111-1, para. 13-4b, *supra*. In testing for prejudice, we note that the incidents giving rise to these letters represented minor misconduct: leaving the duty section, failure to report for duty and an argument and altercation in the duty section. Additionally, trial counsel referred to each of the incidents in cross-examining the chief mas-

ter sergeant and testing the basis of his opinion regarding appellant's rehabilitation potential. There was no defense objection to this line of inquiry. Finally, although the court members sentenced appellant to six months confinement, the convening authority, following the recommendation of his staff judge advocate, reduced the period of confinement to three months. This action was taken to remove any possibility of prejudice resulting from a perceived *Ohrt* violation. We leave for another day the question whether a reduction in confinement is sufficient to remove prejudice resulting from an *Ohrt* violation; however, we are satisfied that the convening authority's corrective action removed any possible prejudice resulting from the prosecution's use of the letters of reprimand.

We decide the remaining asserted error adversely to the appellant. R.C.M. 915(a). The findings are correct in law and fact. MCM, Part IV, paras. 5b(2) and 5c(4). Accordingly, the findings and sentence are

AFFIRMED.